# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ALAN RENFRO,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Case No. 1:16-cv-01733-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL<br><br>(ECF Nos. 20, 26, 27) |

## I.

## INTRODUCTION

Plaintiff Marc Alan Renfro ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from gastroesophageal reflux disease, diabetes mellitus II, hypertension, restless leg syndrome, asthma, obesity, mild left knee degenerative joint disease, mild right knee patellar subluxation, and tobacco abuse. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 12, 13.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on March 13, 2013. (AR 59.) Plaintiff's application was initially denied on August 9, 2013, and denied upon reconsideration on November 13, 2013. (AR 79-81, 85-89.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ"). Plaintiff appeared for a hearing on May 12, 2015. (AR 26-57.) On June 19, 2015, the ALJ found that Plaintiff was not disabled. (AR 10-21.) The Appeals Council denied Plaintiff's request for review on September 15, 2016. (AR 1-4.)

### A.     Hearing Testimony

Plaintiff testified at a hearing on May 12, 2015, and was represented by counsel. (AR 29-48.) Plaintiff was born on April 28, 1969. (AR 29.) He was 5 foot 5 inches tall and weighed 260 pounds. (AR 29-30.) Plaintiff graduated from high school. (AR 31.) Plaintiff worked as a skinner, beef packer, journeyman carpenter doing framing, and garbage collector. (AR 33-34, 45.) Plaintiff lifted 100 pounds about 2/3 of the day as a carpenter on a regular basis. (AR 45-46.) As a skinner, Plaintiff lifted about 60 pounds about 2/3 of the day on a regular basis. (AR 46-47.) Plaintiff pulled the bins as a garbage garbage collector and would roll the bins. (AR 47.)

Plaintiff is married and has two children, ages three years and three months. (AR 30.) Plaintiff lives in a house with his wife, children, mother, and father. (AR 30.) Plaintiff has a driver's license but does not drive. (AR 31.) Plaintiff is able to shower and dress himself. (AR 31.) Plaintiff does no household chores, but he does cook a little and uses the microwave. (AR 31.) Plaintiff shops for groceries and clothing. (AR 31.) Plaintiff mows the lawn once a month on a tractor. (AR 31, 41.) It takes Plaintiff five hours to mow the lawn because he has to take breaks of 30 to 45 minutes. (AR 41-42.) Plaintiff will go to church once in a while. (AR 31.)

On a typical day, Plaintiff wakes up and takes his pills, checks his blood sugar, and has something to eat. (AR 32.) Plaintiff will take a breathing treatment, nap, and then take another breathing treatment. (AR 32.) Plaintiff will eat lunch and maybe take another nap. (AR 32.) Plaintiff takes another breathing treatment, makes dinner and eats, and then does another

breathing treatment before bedtime. (AR 32.) During the day, Plaintiff watches television. (AR 32.) It is hard for him to walk. (AR 32.)

Plaintiff has chronic pain in his knees. (AR 34.) They are swollen daily and painful, and he sees an orthopedic surgeon. (AR 34, 40.) Plaintiff uses Icy Hot two to three times a day which helps a little with the swelling and makes his knees not hurt. (AR 40.) On an average day, Plaintiff's knee pain is 7 out of 10. (AR 41.) If Plaintiff moves stuff around or walks a lot his knees are worse. (AR 41.) Plaintiff has to elevate his feet most of the day or his ankles will swell. (AR 34-35.) Plaintiff has difficulty breathing and sometimes it is worse than others. (AR 35.) Any physical activity causes Plaintiff's breathing to be worse. (AR 42.) Plaintiff uses his rescue inhaler four to five times per day on a normal day. (AR 35.) When the air is bad he will use his rescue inhaler eight to ten times in addition to his nebulizer. (AR 35.) Plaintiff uses his nebulizer four times per day. (AR 35.) His rescue inhaler is for when he is having difficulty catching his breath. (AR 43.) His breathing becomes worse when he smells perfume, strong scents, gasoline, diesel or propane fuel, or when he is stressed. (AR 43.) The medications make it easier for Plaintiff to breathe for a little while. (AR 35.) Heat makes it more difficult to breath than the cold. (AR 35.) Plaintiff had one asthma attack in 2013 and he had to go to the hospital. (AR 42.) Since then he has been on medication. (AR 43.)

Plaintiff's blood sugars are all over the place, between 81 and 254. (AR 36.) Plaintiff takes medication for diabetes, swelling, blood pressure, and pain. (AR 36.) His blood pressure is a little high with the medication. (AR 36.) The pain medication is for his lower back pain. (AR 37.) Plaintiff is most uncomfortable when he is sitting or standing. (AR 37.) He is most comfortable when he is leaning against something or in a reclined position. (AR 37.) Plaintiff has talked to the doctors about his stress but they have not prescribed anything for him. (AR 43.) Plaintiff also takes medication for restless leg syndrome. (AR 44.) Plaintiff's restless leg syndrome makes it hard for him to get up because his legs are tired. (AR 44.) Plaintiff falls asleep a lot when he is riding in a car, sitting and watching a movie, or talking to someone. (AR 44.) Plaintiff generally naps twice a day for an hour or two. (AR 44-45.)

Plaintiff is able to lift and carry 10 pounds. (AR 38.) He can sit or stand for 20 minutes

and walk for about half a block.  (AR 38.)  Plaintiff does not climb stairs.  (AR 38.)  His back hurts when he bends over to put on his shoes and socks.  (AR 38-39.)  Plaintiff smokes and is trying to quit again.  (AR 39.)  Plaintiff had an asthma attack and did not smoke from January 2013 until September 2014.  (AR 39.)  His breathing issues during that time were about the same as they are now.  (AR 39.)  Plaintiff started smoking again in September because things got stressful.  (AR 39.)  Plaintiff smokes about 10 to 15 cigarettes per day now, before his asthma attack he was smoking 35 cigarettes a day.  (AR 40.)

A vocational expert, Jose Chaparro, also testified at the hearing.  (AR 45-56.)

**B.      ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2014.

- Plaintiff did not engage in substantial gainful activity from his alleged onset date of January 31, 2013, through the date last insured of September 30, 2014.

- Through the date last insured, Plaintiff had the following severe impairments: asthma, obesity, mild left knee degenerative joint disease, mild right knee patellar subluxation, and tobacco abuse.

- Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

- Through the date last insured, Plaintiff retained the residual functional capacity to performed sedentary work, except that he can lift and carry 10 pounds occasionally and frequently; stand and walk 2 hours and sit 6 to 8 hours in an 8 hour workday; and occasionally crouch, crawl, climb, and kneel.  Plaintiff should not climb ladders, ropes, or scaffolds and should avoid moderate exposure to dust, gases, and fumes.

- Through the date last insured, Plaintiff was unable to perform any past relevant work.

- Plaintiff was born on April 28, 1969, and was 45 years old on the date last insured which is defined as a younger individual age 18 to 44.  Plaintiff subsequently changed to a younger individual aged 45-49.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skill is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.

- Through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

- Plaintiff was not under a disability as defined in the Social Security Act, at any time from January 31, 2013, through September 30, 2014.

(AR 15-21.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not,

proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by rejecting the opinion of his treating physician, Dr. Montana, and in rejecting Plaintiff's pain and symptom testimony.

///

### A.    Treating Physician

Plaintiff argues that the ALJ erred by giving only partial weight to Dr. Montana's opinion. Plaintiff contends that Dr. Montana referred to his treatment notes in the medical source statement and the notes show that Plaintiff had numerous medical problems. Plaintiff contends that while there was improvement at times, the notes also show exacerbation of symptoms. Plaintiff argues that while the ALJ rejected Dr. Montana's opinion for lack of support in the assessment, the treatment notes as a whole provide details of the complexities of Plaintiff's condition and the ALJ improperly rejected Dr. Montana's opinion for failing to explain the restrictions.

Plaintiff contends that the ALJ also rejected Dr. Montana's opinion because Plaintiff had only been treated by Dr. Montana since November 2014 and had been doing "fairly well" since that time. However, Plaintiff argues that he had been seeing Dr. Montana since June 18, 2014, and the ALJ's interpretation that Plaintiff is doing "fairly well" is an interpretation of the medical evidence that the ALJ may not make.

Defendant counters that the ALJ properly evaluated Dr. Montana's opinion and gave it only partial weight. The ALJ noted that Dr. Montana's opinion was conclusory and did not adequately explain the restrictions or explain what impairment caused the restrictions. Defendant argues that while Dr. Montana referenced a progress note, he did not articulate which progress note. Defendant contends that it is presumable that Plaintiff's limitations were based on Plaintiff's knee or back pain, but there is no explanation why this would cause Plaintiff to have a sitting limitation, require the ability to shift positions at will, or miss four days week. Defendant argues that based on the lack of supporting medical evidence and the scant details provided in the opinion, the ALJ properly held that the opinion was conclusory and she was therefore not required to accept it.

Further, Defendant contends that Dr. Montana's opinion conflicted with the medical record including his own treatment notes. Dr. Montana stated that he had been seeing Plaintiff since November 11, 2014, and as the ALJ noted his treatment records demonstrate that Plaintiff had been doing fairly well since then. While Plaintiff argues that the ALJ interpreted the

medical evidence, it does not require a medical degree to interpret Plaintiff's statements that he was doing better and not using his medication much at all as a sign of improvement. Defendant argues that the ALJ properly performed the role the regulations set forth. Defendant asserts that while Plaintiff points to records that supposedly support a complicated and nuanced view of Plaintiff's impairments, Plaintiff and Dr. Montana both failed to articulate how the impairments support the limitations opined by Dr. Montana.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ considered that in January 2013 Plaintiff had several visits to the emergency room for breathing difficulties and ended up being admitted to the hospital for almost a week due to acute respiratory failure. (AR 17, 221-307.) Plaintiff was discharged on February 7, 2013, with prescriptions for Symbicort and Albuterol and was subsequently seen by his provider who continued the medications, including Prednisone, and recommended exercise. (AR 17, 269, 312.) Plaintiff was followed by this provider who noted wheezing, recommended changes to Plaintiff's diet and exercise, and advised Plaintiff to continue the use of his inhalers. (AR 17-18, 309-324.)

Plaintiff reported in October 2013 that he had twisted his knee and had pain. (AR 18,

465.)  In early October 2013, Plaintiff reported that he was using his inhaler 10 or more times per day after his Symbicort was decreased, but by the end of the month he reported using his inhaler only 3 to 4 times per day and his knee pain had resolved.  (AR 18, 334, 338.)

In March 2014, Plaintiff reported that he was experiencing some lower extremity edema and was treated with Lasix.  (AR 18, 331.)  Plaintiff reported that he had bilateral knee pain for many years, but that his knee was not currently hurting too bad and he did not need an injection at this time.  (AR 18, 331.)

In April 2014, Plaintiff reported that the swelling had improved in both legs since increasing his Lasix, his breathing was okay although it fluctuates from day to day; overall his breathing is getting a little better but he still gets short of breath with minimal exertion.  (AR 18, 325.)  Plaintiff's edema was noted to be improving with Lasix.  (AR 326.)

In May 2014, Plaintiff reported that his breathing was good, but that he did have more difficulty breathing a couple days prior.  (AR 18, 495.)  Plaintiff also reported going to physical therapy for his knee and strength training was recommended.  (AR 18, 495.)  They needed to get cleared by his insurance before he could start.  (AR 18, 495.)  Plaintiff continued to do well as he was tapered off the Prednisone.  (AR 18, 418, 433.)

Plaintiff first saw Dr. Montana on June 18, 2014, and reported knee pain for the past two months and that he was not completely free of episodes of wheezing.  (AR 18, 450.)

On July 2, 2014, Dr. Montana noted that Plaintiff had some audible wheezing when he entered the examination room, but after being in the quiet examination room for several minutes his symptoms markedly improved.  (AR 18, 447.)

A July 14, 2014 MRI of the right knee revealed mild lateral patellar subluxation; small focus of subchondral marrow edema along the medial femoral trochlea; small joint effusion; and minimal subcutaneous soft tissue edema along the anteromedial and lateral aspects of knee.  (AR 18, 465.)  On July 16, 2014, Plaintiff reported that his breathing was doing better, but he was concerned that his symptoms would increase with the tapering of the Prednisone.  (AR 18, 437.)  Dr. Montana noted that Plaintiff had a normal gait, but pain with range of motion of the right knee.  (AR 18, 441.)

The ALJ noted that Plaintiff continued to do well tapering off his Prednisone and he received a knee injection that improved his knee pain. (AR 18.) On July 30, 2014, Plaintiff reported that he was doing okay as he continued to taper off the Prednisone. (AR 433.)

On August 20, 2014, Plaintiff reported that his breathing was doing reasonably well as he continued to taper down on his Prednisone and that his knee was continuing to improve after an injection. (AR 418.)

Plaintiff reported that his breathing remained stable on medication, and he had minimal tenderness with full range of motion in both knees on September 17, 2014. (AR 18, 411, 414.) A September 2014 x-ray of the left knee indicated degenerative arthrosis. (AR 18, 457.)

On October 15, 2014, Plaintiff reported being stable on his medications and doing reasonably well. (AR 406.)

On November 11, 2014, Plaintiff complained that he had back pain for six days after spending a considerable amount of time juicing pomegranates which required him to repetitively press down with his upper extremities. (AR 18-19, 400.) Plaintiff reported that he was taking his medication with no breathing difficulties. (AR 18, 400.) Dr. Montana noted "good symmetrical strength and lower extremity DTRs 2+ and symmetrical in knees and ankles." (AR 18, 404.) Plaintiff had negative straight leg raise bilaterally. (AR 18, 404.)

Plaintiff returned on November 18, 2014, and reported having pain and difficulty sleeping and getting comfortable but no significant radicular pain and no functional deficits. (AR 19, 394.) Plaintiff was prescribed Flexeril and Vicodin. (AR 19, 394, 398.)

On November 25, 2014, Plaintiff returned and reported that his lower back was better with minimal discomfort and no radicular symptoms. (AR 19, 388.) Plaintiff also reported that his asthma remained under good control. (AR 19, 388.) Musculoskeletal examination revealed normal range of motion, normal strength, normal gait, and minimal lumbar tenderness was noted. (AR 19, 392.)

In December 2014, Plaintiff reported that his asthma and allergy symptoms had increased when he developed a sore throat and cough. (AR 19, 375, 382.) He also noted that his back pain had increased because he had run out of medication. (AR 19, 382.)

Plaintiff was seen on January 2015, and reported that his blood sugars have been much better controlled, he is having less pain and discomfort in his lower back, and he is taking his medication with benefit. (AR 19, 347.) On January 7, 2015, Plaintiff reported no overt symptoms but was concerned after having checked his blood sugar. (AR 19, 355.)

On February 13, 2015, Plaintiff reported that he was continuing to do well as long as he takes his respiratory medication, and reported his back continued to progress with less need for medication. (AR 19, 340.)

The ALJ also considered the physical medical source statement completed by Dr. Montana on May 1, 2015. (AR 19, 491-493.) Dr. Montana opined that Plaintiff could sit for one hour at a time for a total of about four hours; stand for thirty minutes at a time; and stand and walk for about four hours total in an eight hour workday. (AR 19, 491.) Plaintiff would need to shift positions and will and would need periods of walking every hour for five minutes. (AR 19, 492.) Plaintiff could frequently lift and carry less than ten pounds and occasionally carry ten pounds; could rarely lift and carry twenty pounds; and never lift and carry fifty pounds. (AR 19, 492.) Dr. Montana further opined that Plaintiff could occasionally twist and climb ladders and stairs, but rarely stoop and crouch. (AR 19, 492.) Plaintiff was capable of performing low stress work and would miss about four days of work each month. (AR 19, 493.) Plaintiff could walk a block at a reasonable pace on rough and uneven surfaces, use standard public transportation, carry out routine ambulatory activities such as shopping and banking, and could climb stairs at a reasonable pace with the use of handrails. (AR 19, 493.)

The ALJ gave this opinion partial weight because it was set forth on a check box form and does not adequately explain the restrictions. (AR 19.) Dr. Montana stated that he had been treating Plaintiff since November 2014 and the treatment records indicate that Plaintiff has been doing fairly well since then. (AR 19.) The ALJ found that the record indicates a restriction on standing and walking two hours is appropriate due to Plaintiff's obesity, COPD, and smoking, but the ALJ did not adopt the opinion that Plaintiff needs to shift positions at will, would need periods of walking every hour, or would miss four days of work each month. (AR 19.) The ALJ also found that Plaintiff should have an additional restriction on climbing ladders due to his

obesity. (AR 19.)

Plaintiff argues that while there was improvement at times, the notes also show exacerbation of his symptoms. However, review of Dr. Montana's treatment notes reflect that Plaintiff's respiratory symptoms improved and were stable. Dr. Montana first saw Plaintiff on June 18, 2014, and noted that his lungs were clear to auscultation, respirations were non-labored, breath sounds were equal and Plaintiff had symmetrical chest wall expansion. (AR 453.)

On July 2, 2014, Dr. Montana noted that Plaintiff had audible wheezing when he entered the examination room, but after several minutes the symptoms were markedly improved and the examination findings were the same as the prior visit. (AR 447.) On July 8, 2014, Plaintiff presented having had a cold for two days. (AR 431.) Dr. Montana noted that Plaintiff had mild expiratory wheezes which were normal for him. (AR 431.)

On all examinations, after this, Dr. Montana noted lungs clear to auscultation, respirations were non-labored, breath sounds were equal, and Plaintiff had symmetrical chest wall expansion. (AR 345, 351, 359, 365, 372, 379, 386, 392, 398, 404, 409, 414, 421, 436, 440, 488.) Further, while Plaintiff did report on June 18, 2014, that he was not completely free of wheezing episodes (AR 450), and Plaintiff did report some increased breathing problems with a sore throat on occasion (AR 375, 382), the record does reflect that Plaintiff continually reported improvement, (AR 340 (continues to do well as long as he takes his medication for respiratory problems), 361 (continues to do reasonably well and tapering off his medication without adverse effects), 368 (breathing better with increased medications), 388 (chronic asthma remains under good control), 400 (taking medications with no breathing difficulties), 406 (stable on medications and doing reasonably well), 411 (respiratory problems remain stable on medication), 418 (breathing continues to do reasonably well as he tapers down on Prednisone), 423 (breathing better), 433 (continuing to taper off Prednisone and doing okay), 437 (no acute respiratory complaints and notes that COPD and asthma are doing somewhat better), 484 (Chronic asthma and DOP remain relatively well controlled as long as he takes his medication on a regular basis with no exacerbations noted)).

In March 2014, Plaintiff complained that he had knee problems for many years but his

knees were not hurting too bad at that time.  (AR 331.)  Plaintiff was sent for a knee x-ray which revealed very mild patellofemoral and very mild medial compartment osteoarthritis.  (AR 467.)  When Plaintiff first saw Dr. Montana on June 18, 2014, he complained of some chronic pain in the right knee for two months.  (AR 450.)  On the next visit he had moderate degree of medial compartment tenderness and pain with limited range of motion due to pain and discomfort especially with extension in the right knee.  (AR 447.)  A July 2014 MRI revealed mild lateral patellar subluxation; small focus of subchondral marrow edema along the medial femoral trochlea; small joint effusion; and minimal subcutaneous soft tissue edema along the anteromedial and lateral aspects of knee.  (AR 465)  On a follow-up visits, Plaintiff's right knee was tender with painful range of motion.  (AR 436, 440.)  On August 20, 2014, Plaintiff reported that his right knee was continuing to improve following an injection but his left knee was somewhat sore.  (AR 418.)

On September 17, 2014, Dr. Montana noted Plaintiff had a normal gait and both knees revealed only minimal tenderness and pain with range of motion with no gross laxity.  (AR 414.)  On October 15, 2014, Dr. Montana found minimal knee tenderness with full range of motion without difficulty.  (AR 409.)

Plaintiff reported injuring his back at an appointment on November 11, 2014, and was found to have very limited range of motion, with a negative straight leg raise.  (AR 400.)  Plaintiff continued to complain of back pain and diffuse lumbar tenderness was noted on November 18, 2014.  (AR 394, 398.)  On November 25, 2014, Plaintiff reported his back pain was getting better with minimal discomfort.  (AR 388.)  Plaintiff had normal range of motion, normal strength, normal gait, and minimal lumbar tenderness was noted.  (AR 392.)

On December 4, 2014, Plaintiff reported significant increase in his lower back pain after having run out of medication.  (AR 382.)  Plaintiff had diffuse increased tenderness in lumbar area to mild palpation across the paraspinous musculature, very limited range of motion, but "good symmetrical syncopal lower extremities with DTRS 2+ symmetrical knees and ankles and negative straight leg raise bilaterally."  (AR 386.)  On December 9, 2014, Plaintiff reported his back pain was about the same.  (AR 375.)  On December 18, 2014, Plaintiff reported occasional

exacerbation of his back pain when he was reaching overhead. (AR 368.) Plaintiff had a normal gait, mild tenderness along the lumbar area with pain with full range of motion, and good symmetrical strength in both lower extremities. (AR 372.) On December 30, 2014, Plaintiff reported that his lower back was doing better and he had not had to use his pain medications much at all. (AR 361.)

On April 22, 2015, Plaintiff reported that he was having problems with his left knee and his lower back continued to be symptomatic depending upon how much work he was doing. (AR 484.) Plaintiff had diffuse lumbar tenderness but with good range of motion. (AR 488.) Plaintiff also had tenderness of both right and left knees with mild effusion bilaterally, and pain with range of motion of both knees. (AR 488.)

Plaintiff argues that the check box form must be considered in conjunction with the treatment notes, but there is substantial evidence in the record to support the ALJ's finding that Plaintiff had been doing fairly well since he was being treated by Dr. Montana. Further, the ALJ found that Dr. Montana's report did not adequately explain the restrictions stated. The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

Plaintiff argues that the ALJ rejected the opinion because Dr. Montana only treated Plaintiff since November 2014, but Dr. Montana had been treating Plaintiff regularly since June 18, 2014. The ALJ noted that "Dr. Montana **stated** that he had only been treating [Plaintiff] since November 2014. . . ." (AR 19 (emphasis added).) Dr. Montana did state on the physical medical source statement that he had been treating Plaintiff since November 11, 2014, (AR 491), although Dr. Montana had been treating Plaintiff since June 18, 2014, (AR 450-453). However, the ALJ did consider Dr. Montana's treatment notes prior to November 11, 2014. (AR 18.) Further, the ALJ did not reject Dr. Montana's opinion due to the longevity of treatment, but because the medical record demonstrated that Plaintiff was doing fairly well.

The ALJ can meet her "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F.2d

1403, 1408 (9th Cir. 1989)).  Here, the ALJ considered the conflicting evidence, stated her interpretation, and made findings.  Substantial evidence supports the ALJ's findings that Dr. Montana did not adequately explain the restrictions set forth in the May 2015 physical medical source statement; and the Court finds that the ALJ did not err in partially rejecting Dr. Montana's opinion.

### B.    Plaintiff's Credibility

Plaintiff argues that the ALJ improperly rejected Plaintiff's testimony based on treatment notes that indicate his symptoms are stable and that the ALJ failed to consider the record as a whole.  Further, Plaintiff contends that the ALJ improperly rejected Plaintiff's testimony regarding the severity of his breathing symptoms because he started smoking again after quitting.

Defendant argues that the ALJ properly found that Plaintiff's testimony conflicts with the objective medical evidence and Plaintiff's statements in the record that he improved.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015).  "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements regarding the severity of the symptoms is not entirely credible. (AR 17.) The ALJ considered that Plaintiff testified that he cannot work because of knee pain and swelling, and asthma and COPD with difficulty breathing. (AR 16, 34-37.) Plaintiff stated that he uses his rescue inhaler four to ten times per day and uses a nebulizer four times per day. (AR 16-17, 35.) He testified that his medications help his breathing but hot weather makes it more difficult to breathe. (AR 17, 35.) Plaintiff said that sitting and standing are his most uncomfortable positions and leaning or reclining are his most comfortable positions and his pain medications do not help him much. (AR 17, 37.) Plaintiff stated he can lift 10 pounds, sit for 20 minutes, stand for 20 minutes, and walk 1/2 block. (AR 16, 38.) Plaintiff cannot climb stairs, bending hurts, and he is trying to stop smoking. (AR 17, 38-39.)

Plaintiff testified that he quit smoking in January 2013, but started again in September 2014 due to stress and smokes 10 to 15 cigarettes a day. (AR 17, 39-40.) Plaintiff uses Icy Hot

two to three times a day to help the swelling in his knees.  (AR 17, 40.)  The pain in his knees is 7 out of 10 and is worse with walking.  (AR 17, 41.)  Plaintiff spends 8 hours a day on inhalation treatments and physical activity, perfume, strong scents, fuel, and stress trigger his breathing problems.  (AR 17, 41, 43.)  Plaintiff also states that he naps twice a day for one to two hours.  (AR 17, 32.)

The ALJ found that the following factors weigh against Plaintiff's credibility.  The treatment records indicate that his symptoms are stable.  (AR 17.)  The record indicates that Plaintiff's knee pain resolved on October 2013, and he did not think the pain was severe enough to warrant injections.  (AR 17.)  Despite Plaintiff's problems breathing, he continues to smoke and despite recommendations to lose weight he has not done so.  (AR 17.)

### A.    Treatment Record

Plaintiff argues that the ALJ erred by rejecting his testimony because the treatment notes indicate that his symptoms are stable and the ALJ must consider the record as a whole.  Defendant counters that the ALJ rejected Plaintiff's testimony because it conflicts with the objective medical evidence.  Defendant also points to Plaintiff's conflicting statements in the medical record which reported improvement of his condition.

Here, the ALJ rejected Plaintiff's symptom testimony on the ground that the treatment records indicate that Plaintiff's symptoms are stable.  (AR 17.)  A reviewing court may draw reasonable inferences from the ALJ's opinion, Magallanes, 881 F.2d at 755, and as discussed above, the ALJ found that review of the medical record showed that Plaintiff was doing "fairly well."  In making the finding, the ALJ set forth a detailed description of the medical record including Plaintiff's statements which indicated that his symptoms had improved and that he was stable.  (AR 340, 361, 388, 394, 400, 406, 414.)  Further, the objective medical evidence generally demonstrates that Plaintiff had normal respiratory examinations, and, other than an occasional flare of his knees, only mild finding that do not support the extent of Plaintiff's alleged limitations.  (ECF No. 345, 351, 359, 365, 372, 379, 386, 392, 398, 404, 409, 414, 421, 436, 440, 447, 453, 457, 465, 467, 488.)

The determination that a claimant's complaints are inconsistent with clinical evaluations

can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). The Court finds that Plaintiff's treatment records indicating his symptoms are stable are a clear and convincing reason to reject Plaintiff's symptom testimony.

### B. Smoking

The ALJ considered that Plaintiff testified that he was unable to work due to difficulty breathing because of his asthma and COPD which require him to use a nebulizer and rescue inhaler up to 10 times per day. (AR 16-17.) However, Plaintiff had an asthma attack and did not smoke from January 2013, until September 2014. (AR 17, 39.) Plaintiff started smoking again in September 2014 because things got stressful. (AR 17, 39.) Plaintiff smokes about 10 to 15 cigarettes per day now, before his asthma attack he was smoking 35 cigarettes a day. (AR 17, 40.) Plaintiff also testified that his breathing issues during the time that he did not smoke were about the same as they are now. (AR 39.)

In Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009), the Ninth Circuit considered a claimant's argument that the ALJ erroneously rejected her credibility on the ground that she continued to smoke. The court found that it was certainly possible that the claimant so was addicted to cigarettes that she continued to smoke even in the face of debilitating shortness of breath and chemical sensitivity. Bray, 554 F.3d at 1227. The court held that even if this were error it would be harmless as the ALJ presented other independent bases for discounting the claimant's credibility. Id. But the Court did find that the claimant's continuing to smoke up to one month prior to the hearing did "belie her claims of debilitating respiratory illness." Id. Further, "courts throughout the Ninth Circuit have determined that smoking against medical advice— particularly where a condition is aggravated by smoking—undermines the

credibility of a claimant's subjective complaints.  Jones v. Colvin, No. 1:14-CV-01991-JLT, 2016 WL 816484, at *8 (E.D. Cal. Mar. 2, 2016) (collecting cases).

On January 15, 2013, Plaintiff was advised to stop smoking when he was diagnosed with bronchitis.  (AR 339.)  On October 2, 2013, the medical record reflects that Plaintiff had quit smoking.  (AR 335.)  Plaintiff reported to his doctor that he quit smoking on November 8, 2013.  (AR 333.)  On December 17, 2013, Plaintiff is reported as a former smoker.  (AR 343.)

Plaintiff started smoking again in September 2014.  (AR 39.)  On November 6, 2014, Plaintiff reported that there was no one smoking in his household.  (AR 344.)  On February 3, 2015, Plaintiff again reported that no one was smoking in the household.  (AR 487.)  When asked at the May 12, 2015 hearing if his doctor has told him to cut back on his smoking, Plaintiff responded, "No.  **Not yet**."  (AR 40 (emphasis added).)  However, it would appear that his doctor has not advised Plaintiff to cut back on his smoking because Plaintiff has not informed his doctor that he started smoking again and twice has indicated that no one in the household was smoking although he was smoking.

Here, Plaintiff has severe respiratory problems of asthma and COPD and alleges that his respiratory symptoms have not improved.  But Plaintiff quit smoking from January 2013 until September 2014.  The ALJ could reasonably conclude that if Plaintiff's symptoms were as severe as he alleged he would not have started smoking against the advice of his physicians after having not smoked for more than a year and a half.  The fact that Plaintiff was smoking was a clear and convincing reason to reject Plaintiff's testimony.

### C.    Knee Pain

Plaintiff argues that the ALJ erred in rejecting his credibility because his knee pain resolved.  The ALJ also found that Plaintiff's knee pain resolved in October 2013, and in March 2014, Plaintiff did not think that his knee pain was severe enough to warrant steroid injections.  (AR 17.)  However, Plaintiff was evaluated for physical therapy and received a steroid in injection in August of 2014.  (AR 418, 495.)  Also, Plaintiff alleged that he was having knee pain in April 2015, and Dr. Montana found tenderness of both right and left knees with mild effusion bilaterally.  (AR 488.)  Accordingly, the ALJ's finding that Plaintiff's knee pain resolved in

October 2013 is not supported by substantial evidence in the record and this was not a clear and convincing reason to reject Plaintiff's credibility.

### D. The ALJ Provided Clear and Convincing Reasons for the Adverse Credibility Finding

In summary, while some of the ALJ's findings on credibility are clear and convincing reasons supported by substantial evidence in the record, the ALJ's finding as to Plaintiff's knee impairment is not. In <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1162 (9th Cir. 2008), the Ninth Circuit found that two of the reasons provided by the ALJ supported an adverse credibility finding, but others did not. Where some of the reasons provided by the ALJ are not clear and convincing reasons to reject a claimant's credibility, the question is whether the decision remains legally valid, despite the error. <u>Id.</u> "So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." <u>Id.</u> (internal punctuation and citations omitted).

Here, the ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony that are supported by substantial evidence in the record. For this reason, the erroneous finding as to Plaintiff's knee limitation is harmless error.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in finding that Plaintiff's symptom testimony was not credible and in the weight provided to Dr. Montana's opinion.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Marc Alan Renfro. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __October 25, 2017__

UNITED STATES MAGISTRATE JUDGE